S98Q0326. PRODIGY CENTERS/ATLANTA et al. v. T-C ASSOCIATES et al.
(501 SE2d 209)

BENHAM, Chief Justice.

The United States Court of Appeals for the Eleventh Circuit has certified a question of Georgia law to this Court pursuant to Georgia constitutional and statutory authorization. 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a). The question arises in an appeal from the grant of summary judgment by the United States District Court for the Northern District of Georgia which gave priority to a judgment lien over a federal tax lien filed by the Internal Revenue Service. We have been asked to determine "whether a partnership interest in a limited partnership is a chose in action under Georgia law." *Prodigy Centers/Atlanta v. T-C Assoc.,* 127 F3d 1021, 1022 (11th Cir. 1997).

The factual background which gives rise to this case is as follows: In January 1992, appellee T-C Associates (TCA) obtained a judgment against Prodigy Child Development Centers (PCDC) in the Superior Court of Fulton County, but did not record its judgment lien until May 1994. Shortly after recording its judgment lien, TCA applied for a charging order in DeKalb County seeking to charge PCDC's partnership interests in two limited partnerships,[1] appel-

---

[3] See OCGA § 24-3-14.

[1] Under the Georgia Revised Uniform Limited Partnership Act, OCGA § 14-9-100 et seq., and the Uniform Limited Partnership Act, OCGA § 14-9A-1 et seq., a limited partnership is "a partnership formed . . . by two or more persons . . . having [as members] one or more general partners and one or more limited partners. . . ." OCGA § 14-9-101 (8); OCGA § 14-9A-2. "The defining characteristic of a limited partnership is that those partners who

lants Prodigy Centers/Atlanta No. 1 L.P., and Prodigy Centers No. 2, with payment of the unsatisfied judgment. By consent order, the limited partnerships were ordered to pay any income owed to PCDC to an escrow agent until TCA's judgment was paid in full.

Between the time TCA obtained the judgment against PCDC and the time it recorded its judgment lien, the IRS filed a federal tax lien against PCDC in the Superior Court of Fulton County. In light of the federal tax lien against PCDC and the DeKalb County charging order requiring payment to TCA of any money owed to PCDC, the limited partnerships filed a complaint in the Superior Court of Fulton County against TCA and the United States for equitable and statutory interpleader. The interpleader action was removed to the Northern District of Georgia, where the government moved for summary judgment on the ground that its tax lien had been filed before TCA had recorded its judgment. TCA filed a cross-motion for summary judgment because its January 1992 judgment against PCDC was issued before the federal tax lien was filed. The government responded by asserting that the interpled funds constituted a chose in action to which TCA's general judgment could not attach without a charging order, garnishment, or some other collateral proceeding, which action had not taken place until after the government had filed its federal tax lien.[2] Concluding that Georgia case law did not require TCA to record its judgment or to levy on or seize the monies owed PCDC by the limited partnerships in order to render the judgment effective against a third party acquiring a lien on PCDC's property, the district court granted TCA's cross-motion for summary judgment. The district court responded to the government's contention that the interpled funds were a chose in action by way of a footnote in which the court stated that the interpled funds were "proceeds payable to PCDC as a result of its status as a partner in the partnerships" and did not represent PCDC's interest in the partnerships. Concluding that TCA's judgment was effective and perfected as to the income from the partnership interest the day the judgment was issued, the district court ruled that TCA's lien had priority over the tax lien.[3]

---

are limited partners can invest capital in the business of the partnership and take a share in the profits without becoming liable for partnership debts and obligations. . . . [T]he general partners are liable for the payment of all the debts and obligations of the partnership . . . ." Kaplan's Nader, Ga. Corps. Lim. Parts. And Lim. Liab. Cos. (1997 ed.), § 16-1.

[2] The Internal Revenue Code gives a judgment lien creditor priority over a federal tax lien until notice of the federal tax lien is filed properly. 26 USC § 6323 (a). A federal tax lien attaches upon assessment, but a judgment lien creditor has priority over a federal tax lien if the judgment lien is perfected before notice of the federal lien is properly recorded. *United States v. Gilbert Assoc.*, 345 U. S. 361, 363-364 (73 SC 701, 97 LE 1071) (1953).

[3] A judgment obtained in a Georgia court binds all the property of the defendant in judgment, both real and personal, from the date of such judgment. OCGA § 9-12-80. However,

On appeal to the Eleventh Circuit, the government continued to argue that PCDC's partnership interests in the appellants were choses in action to which the judgment lien did not attach until the initiation of a collateral proceeding. In its certification opinion, the Eleventh Circuit recognized that this Court may have implicitly held that a partnership interest was a chose in action in *Ivey v. Gatlin*, 194 Ga. 27 (20 SE2d 592) (1942), but expressed concern whether the issue was squarely before the *Ivey* court. Noting the relatively recent evolution of Georgia partnership policies, the federal appellate court described itself as "hesitant to rely on *Ivey* to predict the position that the Supreme Court of Georgia would take on this issue today." Accordingly, the Eleventh Circuit asked this Court to determine whether a partnership interest is a chose in action.

1. "A chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." OCGA § 44-12-20. A chose in action includes the proceeds from a contract performance, and is also the right of a creditor to be paid on a debt owed by a debtor. *Paulsen Street Investors v. Ebco Gen. Agencies*, 224 Ga. App. 507, 509 (481 SE2d 246) (1997). See also *Water Processing Co. v. Toporek*, 158 Ga. App. 502, 503 (280 SE2d 901) (1981) (rev'd on other grounds sub nom. *Water Processing Co. v. Southern Golf Builders*, 248 Ga. 597 (285 SE2d 21) (1981)), where the Court of Appeals noted that "[t]he chose in action is the right of the creditor to be paid . . . ." A partnership interest in a limited partnership is personal property. OCGA §§ 14-9-701; 14-9A-49.[4] See also *Maxco, Inc. v. Volpe*, 247 Ga. 212

---

the lien of a judgment in the special sense which prevents the transfer of property of the debtor after its rendition, attaches only to such property [of the debtor] as is capable of seizure and sale under execution based upon the judgment. . . . [C]hoses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. [It] must be reached either by process of garnishment, or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. Until it has been so seized by the courts for the purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor . . . .

*Fidelity &c. Co. v. Exchange Bank*, 100 Ga. 619, 625 (28 SE 393) (1897). See also *Fourth Nat. Bank v. Swift & Co.*, 160 Ga. 372, 377 (127 SE 729) (1925); OCGA § 9-13-57 ("Choses in action are not liable to be seized and sold under execution, unless made so specially by statute.").

[4] Citations to both the Georgia Revised Uniform Limited Partnership Act (OCGA § 14-9-100 et seq., and the Uniform Limited Partnership Act (OCGA § 14-9A-1 et seq.), are necessary because the record does not reflect when the limited partnerships involved herein were formed. The Georgia RULPA does not apply to limited partnerships existing before July 1, 1988, unless the pre-existing limited partnership voluntarily elects to adopt the Georgia RULPA and become subject to its provisions. OCGA §§ 14-9-1201 (a), (b); 14-9-1202. The ULPA applies to those limited partnerships in existence on July 1, 1988, which have not so

(274 SE2d 561) (1981). The question is whether a "partnership interest" is property to which the partner has a right of possession in the future.

2. The Georgia Revised Uniform Limited Partnership Act ("RULPA") defines "partnership interest" as "a partner's share of the capital and profits and losses of a limited partnership, the right to receive distributions of partnership assets, and the right to receive any allocation of income, gain, loss, deduction, credit, or similar items." OCGA § 14-9-101 (11). The definition covers all of a partner's *financial* rights (OCGA § 14-9-101, Comment), and does not include a partner's management rights. See OCGA §§ 14-9-302; 14-9-403. Under the Uniform Limited Partnership Act ("ULPA"), a limited partner has "the right to receive a share of the profits or other compensation by way of income and to the return of his contribution . . ." (OCGA § 14-9A-42 (b)), as well as the managerial rights to inspect and copy the partnership books; to demand true and full information concerning the partnership and a formal accounting, and to seek judicial dissolution and winding up of the partnership. Id. A general partner[5] in a ULPA limited partnership has an "interest in the partnership" which is the partner's "share of the profits and surplus. . . ." OCGA § 14-8-26. See OCGA § 14-9A-70. The "interest in the partnership" is but one of the general partner's property rights: the general partner also has rights in specific partnership property and the right to participate in the management of the limited partnership. OCGA § 14-8-24.

3. From the above, it can be seen that, where statutorily defined, a "partnership interest" denotes the financial aspect of partnership, and we limit our analysis accordingly. The personalty at issue in the case before us is the accumulation of monies paid by the limited partnerships of which PCDC is a partner, as a result of PCDC's partnership interest. Under the Georgia RULPA and the Georgia ULPA, the partnership agreement or the limited partnership's certificate of formation must contain the method of allocating financial items (i.e., deductions, credits, income, gains, losses, and distributions); in the absence of a written provision, the allocation of financial items is statutorily set. The Georgia RULPA requires that allocations be made on the basis of the amount of the partner's contributions, in the absence of a written method of allocation (OCGA § 14-9-503), and the

---

elected. OCGA § 14-9A-2.1. Permitting pre-existing limited partnerships to be governed by prior law is one factor which distinguishes the Georgia version of the RULPA from the Official RULPA, which applies the new act to existing partnerships. OCGA § 14-9-1201, Comment.

[5] As noted by the Eleventh Circuit in its question certification, the record does not establish whether PCDC is a limited or general partner in the limited partnerships. *Prodigy Centers/Atlanta v. T-C Assoc.*, supra, 127 F3d at 102, n. 3.

Georgia ULPA provides for equal allocation among the partners if the formation certificate does not make provisions to the contrary. OCGA §§ 14-9A-45; 14-9A-20 (a) (I). Thus, a partner in a limited partnership has a contractual or statutory right to a portion of the financial items produced by the limited partnership. While neither the partnership agreements nor the certificates of formation are contained in the appellate record, the existence of the interpled funds and the limited partnerships' complaint for interpleader make it clear that payments have been made by the limited partnerships as a result of PCDC being a partner in the limited partnerships. We believe we are safe in concluding that the funds at issue are those to which PCDC had a contractual or statutory right to possession but for the charging order which required the limited partnerships to make the contractual or statutory payments into the fund at issue. As proceeds from a contract performance or as a creditor's right to be paid, the interpled funds constituted a chose in action. *Paulsen Street Investors v. Ebco Gen. Agencies*, supra, 224 Ga. App. at 509.

4. Our conclusion that the financial payments to which a partner of a limited partnership is entitled pursuant to statute or the partnership agreement/certificate of formation is a chose in action is supported by the Georgia RULPA and the Georgia ULPA. Each statute provides a means by which a judgment creditor of a partner may cause the diversion of monetary payments the partner expects to receive from the partnership to the partner's judgment creditor. Under both statutory schemes, the judgment creditor must initiate a collateral proceeding in which the creditor seeks a court order charging the debtor partner's partnership interest with payment of the unsatisfied amount of the judgment, or serves process of garnishment on the partnership. (OCGA §§ 14-9-703 (a); 14-9A-52 (a); 14-8-28 (a).) A judgment creditor must initiate the identical collateral proceedings in order to attach a lien to a chose in action. *Fidelity &c. Co. v. Exchange Bank*, 100 Ga. 619, 625 (28 SE 393) (1897).

With the understanding that we are construing "partnership interest" to denote only the contractually or statutorily provided financial aspects of a partner's rights in a limited partnership, we conclude that a "partnership interest" is a chose in action.

*Question answered. All the Justices concur.*

DECIDED JUNE 8, 1998.

*Kaufman, Chaiken, Miller & Klorfein, Fredric Chaiken, Kent B. Alexander, Janet F. King,* for appellants.

*Sutherland, Asbill & Brennan, William R. Wildman, Alfred A. Lindseth, Amanda B. Scott,* for appellees.